UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LORAINE ELIZABETH CETINO GARCIA, | CASE NO. 2:26-cv-00556-LK |
| Petitioner, | ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS |
| v. | |
| KRISTI NOEM et al., | |
| Respondents. | |

This matter comes before the Court upon Petitioner Loraine Elizabeth Cetino Garcia's petition for a writ of habeas corpus. Dkt. No. 1. For the reasons explained below, the Court grants in part and denies in part Cetino Garcia's petition.[1]

## I.    INTRODUCTION

Cetino Garcia is a native and citizen of Guatemala. Dkt. No. 5 at 2. She first entered the United States in November 2005 and was immediately encountered by U.S. Customs and Border Protection ("CBP"). *Id.* The U.S. Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA"), charging that Cetino Garcia was removable pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(i). *Id.* DHS released

---

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009) (holding that "the district court must hold an evidentiary hearing" where "the record is insufficient to decide whether [the petitioner's] detention is authorized").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 1

her on an Order of Release on Recognizance ("OREC") while her removal proceedings commenced. *Id.* At some point thereafter, Cetino Garcia left the United States without informing DHS. *Id.* In February 2006, Cetino Garcia was ordered removed in absentia. *Id.*; *accord* Dkt. No. 1 at 1; *see* 8 U.S.C. § 1229a(b)(5)(A) ("Any [noncitizen] who . . . does not attend a proceeding . . . shall be ordered removed in absentia" if certain conditions are met).

Cetino Garcia re-entered the United States in June 2019. Dkt. No. 5 at 2. CBP again encountered her shortly after arrival, arrested her, and briefly "held [her] per INA § 241," 8 U.S.C. § 1231. *Id.*; *accord* Dkt. No. 1 at 5 (DHS "reinstated her prior removal order" in 2019).[2] The same day, DHS released Cetino Garcia "on Order of Supervision" and enrolled her in "the Alternative[s] to Detention Program ('ADT')." Dkt. No. 5 at 3; Dkt. No. 1 at 5. Cetino Garcia has been living under supervision in the United States since 2019; she avers (and Respondents[3] do not dispute) that she "fully complied with all conditions of supervision" including attending check-ins. Dkt. No. 1 at 5; *see generally* Dkt. Nos. 4–5.

At one such recent check-in, on February 6, 2026, Cetino Garcia reported to Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations ("ERO") in Seattle, Washington. Dkt. No. 5 at 3. At the check-in, ERO apparently "discovered" that Cetino Garcia "had a final order of removal" from February 2006, when she was ordered removed in absentia. *Id.* "At that time, ERO decided to revoke [her] OREC and issued her warrant of arrest and notice

---

[2] Respondents do not contend that Cetino Garcia is currently detained pursuant to 8 U.S.C. § 1231. *See generally* Dkt. No. 4; Dkt. No. 5 at 3 ("Petitioner is being held under INA § 235 [8 U.S.C. § 1225].").

[3] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 2

of detention." *Id.*[4] ICE arrested Cetino Garcia and transferred her to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington, where she is currently held. *Id.* According to Respondents, ICE "served [Cetino Garcia] with a new NTA on February 6, 2026, alleging, in part that [she] was removable . . . pursuant to INA § 212(a)(6)(A)(i)," 8 U.S.C. § 1182(a)(6)(A)(i). *Id.*

The parties appear to dispute whether Cetino Garcia had any pending immigration proceedings prior to her February 2026 arrest. Cetino Garcia avers that in December 2020 she "filed Form I-589 seeking protection from removal" and that her "application remains pending in withholding-only proceedings." Dkt. No. 1 at 2. In contrast, Respondents' declarant avers that Cetino Garcia "filed for an immigration benefit" with U.S. Citizenship and Immigration Services ("USCIS") in December 2020, but that USCIS closed her case "due to her previous removal order" dated "February 22, 2006." Dkt. No. 5 at 3. Neither party included as an exhibit to their filings any documentation of Cetino Garcia's immigration history that sheds light on the issue.[5]

After being detained at NWIPC for two weeks, Cetino Garcia filed a petition for writ of habeas corpus on February 16, 2026. Dkt. No. 1. Respondents filed a return on March 3, 2026. Dkt. No. 4. Cetino Garcia filed a traverse. Dkt. No. 6.

## II.    DISCUSSION

In her habeas petition, Cetino Garcia alleges that Respondents violated her right to procedural due process under the Fifth Amendment by re-detaining her without "written notice"

---

[4] Respondents' declarant's statement here that ERO revoked her OREC does not comport with his earlier statement that "Petitioner was released on Order of Supervision" in 2019. Cetino Garcia also appears to conflate which type of order of release was issued in 2019. *Compare* Dkt. No. 1 at 2 (released "under an Order of Supervision"), *with* Dkt. No. 6 at 1, 5 ("released on OREC"). Respondents adopt the argument that Cetino Garcia was released on an OREC in 2019. *See* Dkt. No. 4 at 2–3.

[5] Indeed, other than Respondents' unsupported declaration, Dkt. No. 5, neither party included any exhibits; the record is bereft of any documentation corroborating the parties' factual assertions. Due to the parties' competing factual assertions and lack of detail in their briefing, the Court cannot ascertain the statutory authority under which Petitioner is detained. Respondents are obviously in a better position to provide documentation to shed light on this question; in fact, given the conflicting information the Court has received from Respondent, the Court will not credit Respondents' declarations if they do not attach easily obtainable corroborating exhibits, such as relevant portions of a Petitioner's A-file. As discussed below, Cetino Garcia is entitled to release regardless of the governing statutory authority.

or a "meaningful chance to be heard by a neutral decisionmaker[.]" Dkt. No. 1 at 10. She also alleges that "[a]t no time did ICE allege that [she] violated the terms of her supervision, failed to report, absconded, or engaged in criminal conduct," and "[t]he record reflects no changed circumstances that would justify revocation of supervised release." *Id.* at 6. She requests that the Court (1) order her immediate release; (2) "permanently enjoin her re-detention during the pendency of her removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks;" (3) enjoin Respondents from using a GPS ankle monitor upon her release, absent the same clear and convincing evidence; (4) declare that her "re-detention while removal proceedings are ongoing without first proving an individualized determination before a neutral decisionmaker violates the Due Process Clause of the Fifth Amendment;" and (5) order attorney's fees and costs. *Id.* at 11.

## A.    Legal Standards

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

The federal courts have "long recognized the existence of an implied cause of action through which plaintiffs may seek equitable relief to remedy a constitutional violation." *Roman v. Wolf*, 977 F.3d 935, 941 (9th Cir. 2020). A plaintiff seeking a permanent injunction must demonstrate (1) that she has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and flexibility are inherent in equitable remedies." *Roman*, 977 F.3d at 942 (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

**B.     Cetino Garcia Has Established a Due Process Violation**

As this Court has already informed Petitioner's counsel, *Singh v. Noem*, No. 2:26-CV-00503-LK, 2026 WL 657036, at *3 (W.D. Wash. Mar. 9, 2026), it is unhelpful to the Court when a petition—like Cetino Garcia's here—ignores the statute to which she is subject, and instead essentially insists that due process demands the same procedures no matter which statute applies.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 5

*See* Dkt. No. 1 at 6–10. The Ninth Circuit has rejected such a proposition, and this Court has too. *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022); *Singh*, 2026 WL 657036, at \*3. The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Rodriguez Diaz*, 53 F.4th at 1196. Accordingly, the Court addresses the applicable statutory governing authority.

Respondents argue only that Cetino Garcia is currently detained pursuant to 8 U.S.C. § 1225(b) without providing any reliable evidentiary support for that proposition. Dkt. No. 4 at 3–4; *see* Dkt. No. 5 at 3 (stating "Petitioner is being held under INA § 235," 8 U.S.C. § 1225). In her traverse, Cetino Garcia contends that DHS previously released her pursuant to 8 U.S.C. § 1226(a), so they cannot retroactively apply the mandatory detention standard of 8 U.S.C. § 1225(b). Dkt. No. 6 at 3–4. As discussed above, the parties do not provide any evidence corroborating their factual assertions, leaving the Court unable to discern which statute governs.

The parties appear to agree that Cetino Garcia was ordered removed in absentia in 2006, and that this final order of removal was reinstated when she re-entered the country in 2019. Dkt. No. 1 at 1 (DHS "reinstated the prior removal order"); Dkt. No. 5 at 2 ("Petitioner was held per INA § 241 [8 U.S.C. § 1231]"); *id.* at 3 ("ERO discovered the Petitioner had a final order of removal from February 22, 2006."); *see* 8 U.S.C. § 1231(a)(5) (if a noncitizen "has reentered the United States illegally" after being removed or departing voluntarily, "under an order of removal," then the "prior order of removal is reinstated"). Neither party addresses the effect of the prior removal order or its reinstatement. The parties disagree as to whether Cetino Garcia has ongoing withholding-only proceedings, Dkt. No. 1 at 2; Dkt. No. 5 at 3, but even if a noncitizen with a reinstated final order of removal pursuant to 8 U.S.C. § 1231(a)(5) applies for withholding of removal to a certain country, their reinstated order of removal remains administratively final. This

is because withholding-only proceedings do not affect the determination that the noncitizen may be removed *from* the United States, only whether he or she may be removed *to* certain other countries. *Padilla-Ramirez v. Bible*, 882 F.3d 826, 831–32 (9th Cir. 2018).

Regardless of whether Respondents re-detained Cetino Garcia under Section 1225(b) (as Respondents contend), Section 1226(a) (as Cetino Garcia contends for the first time in her traverse), or Section 1231(a) (as the reinstated final order of removal suggests), Respondents failed to provide the required procedural due process. Although Respondents contend that "the existing procedures for re-detention are constitutionally sufficient," Dkt. No. 4 at 6, they make no effort to describe those procedures or how they were satisfied here, *see generally* Dkt. No. 4. To the extent Cetino Garcia has been re-detained under 8 U.S.C. § 1225(b), Respondents failed to provide the required process in revoking her parole for the reasons described in *Dieng v. Hermosillo*, No. 2:26-CV-00190-LK, 2026 WL 411857 (W.D. Wash. Feb. 13, 2026) and *Albornoz v. Hermosillo*, No. 2:25-CV-02713-LK, 2026 WL 444983 (W.D. Wash. Feb. 17, 2026). To the extent Cetino Garcia has been re-detained under 8 U.S.C. § 1226(a), Respondents failed to provide the required process in revoking her release for the reasons described in *Singh v. Noem et al.*, No. 2:26-cv-00503-LK, 2026 WL 657036 (Mar. 9, 2026).

To the extent Cetino Garcia has been re-detained pursuant to 8 U.S.C. § 1231(a), here too Respondents failed to provide the required process. Because the final removal period has long expired if Cetino Garcia is subject to Section 1231(a), the governing authority would be 8 U.S.C. § 1231(a)(6) (allowing, but not mandating, detention beyond the removal period) and 8 U.S.C. § 1231(a)(3) (requiring supervision if released). Under the implementing regulations, a noncitizen's release under Section 1231(a)(6) can be revoked if she violates a condition of release, if there is a significant likelihood of removal "in the reasonably foreseeable future," or if revocation is in the public interest. 8 C.F.R. §§ 241.4(l), 241.13(i); *see also Manjit Singh v. Bondi*, No. C26-

0477-KKE, 2026 WL 586230, at *2 (W.D. Wash. Mar. 2, 2026). "Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release," and DHS "will conduct an initial informal interview promptly after his or her return to . . . custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3); *see also* 8 C.F.R. § 241.4(l)(1) ("Upon revocation, the [noncitizen] will be notified of the reasons for revocation of his or her release . . . [and] be afforded an initial informal interview[.]"); *Ceesay v. Kurzdorfer*, 781 F. Supp. 3d 137, 163 (W.D.N.Y. 2025) (courts "have interpreted section 241.4(l) as requiring an informal interview upon the revocation of release regardless of the reason for the revocation") (collecting cases). "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release," and the noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision." 8 C.F.R. § 241.13(i)(3). Again, Respondents make no attempt to explain how the government complied with these (or any other) regulatory requirements in this case.

The parties do not dispute that Cetino Garcia has continuously been in the United States since 2019, that she "has complied with all conditions imposed by ICE," that she "has no criminal history," and that there are no "changed circumstances" justifying revocation of her release. Dkt. No. 1 at 2, 6; *accord* Dkt. No. 4 at 2–3. For the same reasons the Court explained in *Dieng*, 2026 WL 411857, at *7–8, *Albornoz*, 2026 WL 444983, at *5–6, and *Singh*, 2026 WL 657036, at 5–7, each of the *Mathews* factors weigh in favor of Cetino Garcia. Respondents failed to provide Cetino Garcia with the procedures due to her under the Due Process Clause regardless of the authority under which they re-detained her, and accordingly, her detention is unlawful.

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 8

**C.     The Court Denies Cetino Garcia's Request Preventing Re-Detention or Setting Conditions on Release**

In addition to immediate release, Cetino Garcia requests an order permanently enjoining "her re-detention during the pendency of her removal proceedings absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no alternatives to detention would mitigate those risks[.]" Dkt. No. 1 at 11. She also requests an order enjoining Respondents from "placing GPS ankle monitors on [her] upon her release, absent clear and convincing evidence that [she] is a flight risk or danger a danger to the community and that no other alternatives would mitigate those risks[.]" *Id.* Respondents oppose these requests, arguing that Cetino Garcia "has not demonstrated that there is more than a 'mere possibility' that she would be re-detained" or established that ICE's "potential use of monitoring techniques is likely or would be arbitrary." Dkt. No. 4 at 7–8.

Where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941–42. Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Nowhere in Cetino Garcia's petition does she allege that re-detention is likely if she were to be released, that such detention is likely to occur without compliance with the government's regulations or policies, or that Respondents will place GPS monitoring devices

on her without justification. Without argument or evidence that those outcomes are likely to occur, Cetino Garcia's requests constitute nothing more than a "mere possibility" of harm that do not entitle her to relief. *Id.* For these reasons, the Court denies her request for injunctive relief regarding the standard of proof at a potential future, post-release re-detention hearing, or regarding an ankle monitor if she is released.

### III.    CONCLUSION

For the foregoing reasons, the petition for writ of habeas corpus, Dkt. No. 1, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

1.    Respondents shall immediately release Cetino Garcia from custody on the terms of her most recent order of release;

2.    The parties shall file a Joint Status Report by March 17, 2026, confirming that Cetino Garcia has been released;

3.    Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr. Ctr.*, No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (the Equal Access to Justice Act authorizes award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158 F.4th 1152, 1162 (10th Cir. 2025) (same); *see also Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK,

2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022); *see also* Dkt. No. 1 at 6, 10 (referring to Cetino Garcia as "he" and "him"); *id.* at 10 (arguing that certain principles compel "both Petitioners'" release); Dkt. No. 1-2 at 1 (stating that "Petitioner" has not verified the petition "himself" because "he is detained in a different county"). The Court will carefully scrutinize any fee application it receives from Cetino Garcia's counsel.

Dated this 16th day of March, 2026.

Lauren King
United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS - 11